IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    Plaintiff,

v.

BRIAN COLE JR

    Defendant.

Case No: 1:25-mj-00276-MAU

## BRIAN COLE'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR DETENTION

    Defendant Brian Cole Jr. respectfully submits this response in opposition to the government's motion for pretrial detention and in advance of the detention hearing scheduled for December 30, 2025. Mr. Cole should be released pending trial because the governing, multi-factor analysis demonstrates that bail is required under a set of strict conditions, as proposed herein.

### INTRODUCTION

    The defense understands that the detention hearing will begin with preliminary discussions that concern whether a rebuttable presumption that Mr. Cole should be detained arises in this case. The defense's position is that the government cannot continue to keep Mr. Cole in custody absent a valid finding of probable cause.

1

Probable cause or not, Mr. Cole should be released pending trial. The Bail Reform Act starts with liberty, not jail; detention is the "carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The government-induced excitement around the arrest of Mr. Cole should not take this Court's focus away from two essential principles of law that govern bail hearings.[1]

First, "[i]n the absence of a concrete, prospective threat to public safety that cannot be mitigated by strict conditions, th[e] Court must apply the default rule favoring liberty." *United States v. Klein,* 539 F. Supp. 3d 145, 155 (D.D.C. 2021) (quoting *United States v. Cua,* 2021WL 918244 at *8); *see also United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("The default position of the law, therefore, is that a defendant should be released pending trial.").

Second, whether Mr. Cole is guilty of the offenses charged is wholly irrelevant to his bail proceeding: "[a] district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the

---

[1]   Indeed the U.S. Attorney has made numerous comments in contravention of Local Criminal Rule 57.7(b), specifically concerning the "existence or contents of any confession, admission, or statement given by the accused" ((b)(3)(ii)) and "opinion[s] as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case" ((b)(3)(vi)). *See* https://abcnews.go.com/US/pipe-bomb-suspect-disappointed-2020-election-results-us/story?id=128157568 (U.S. Attorney Pirro telling the media that based on the evidence, it is "unmistakable" that Mr. Cole is guilty and that "[t]his guy was an equal opportunity bomber."); *see also* https://www.facebook.com/judgejeaninepirro/posts/my-office-has-filed-court-documents-that-brian-cole-jr-accused-ofplacing-pipe-b/1424070829083142/ (U.S. Attorney Pirro posting on Facebook that Mr. Cole "has admitted that he was responsible for the devices and gave a detailed confession to the charged offenses").

weight of the evidence of defendant's dangerousness." *United States v. Hunt*, 240 F. Supp. 3d 128, 134 (D.D.C. 2017).

The government's detention motion tells the Court little more than the government is optimistic that it will be able to convict Mr. Cole at trial. It focuses on "the overwhelming evidence of his guilt," and "[t]he weight of evidence against the defendant, and the attendant likelihood of his conviction for serious offense, support pretrial detention." Dkt. 17 at 1, 20. The government is wrong. Mr. Cole is presumed innocent, and any attempt to argue his guilt at this point, in support of detention, is misguided. *Hunt*, 240 F. Supp. 3d at 134.

The burden on the government is far greater than merely reciting Mr. Cole's criminal charges and concluding, without more, that he is "dangerous." *Id*. The question is whether there is a present danger—a contention the government never actually makes, and something belied by the past four years in which Mr. Cole has lived without incident. The government's burden to demonstrate a present danger becomes insurmountable when considering the following factors favoring pretrial release:

1. Mr. Cole is an African American adult who has been diagnosed with Autism Spectrum Disorder, Level 1 and with obsessive compulsive disorder;
2. Mr. Cole has zero criminal history;
3. Mr. Cole has had no issues complying with court orders;

4. Mr. Cole is a high school graduate, who has had continual employment since his teenage years;

5. Mr. Cole has lived in the same community since childhood, without incident;

6. Mr. Cole's neighbours and others who have dealt with him over many years, vouch for his character;

7. Mr. Cole has a reliable job waiting for him upon release;

8. Mr. Cole can have a vetted custodian where he will live upon release;

9. Mr. Cole submits to house arrest;

10. Mr. Cole submits to an ankle monitor and weekly reporting;

11. Mr. Cole submits to unannounced visits by pre-trial services;

12. No one was actually harmed as a result of the conduct for which Mr. Cole has been charged; and

13. No property was damaged as a result of the conduct for which Mr. Cole has been charged.

See *Klein,* 539 F. Supp. 3d 145; see also *Hunt*, 240 F. Supp. 3d 128; see also 18 U.S.C. § 3142(e)(3) & (g); *see also United States v. Munchel*, 991 F.3d 1273, 1289 (D.C. Cir. 2021) (Katsas, J., concurring). The government cannot negate these facts, and thus this Court should order Mr. Cole's pre-trial release under strict conditions, as proposed herein.

## ARGUMENT

The Eighth Amendment guarantees reasonable bail. U.S. Const. amend. VIII. Congress has implemented this guarantee through the Bail Reform Act, which permits pretrial detention only when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

When ordering pretrial detention based solely on the danger to the community prong, the government must present "clear and convincing evidence" of dangerousness. 18 U.S.C. § 3142(f). "The default position of the law, therefore, is that a defendant should be released pending trial." *Taylor*, 289 F. Supp. 3d at 62 (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

True, the Bail Reform Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure . . . the safety of the community if . . . there is probable cause to believe that the person committed" one of an enumerated list of crimes. 18 U.S.C. § 3142(e)(2). *But* for purposes of making that determination, "[a] grand jury indictment, by itself" is what establishes the probable cause "to believe that a defendant committed the crime with which he is charged." *Taylor*, 289 F. Supp. 3d at 62 (quoting *Stone*, 608 F.3d at 945); *see also United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community.") Moreover, this Court has made clear that "[t]o require an independent finding of probable cause apart from those of the grand jury

5

for purposes of section 3142(e) would be a waste of judicial resources." *United States v. Williams*, 903 F.2d 844 (D.C. Cir. 1990) (per curiam) (unpublished). The reasoning makes sense when considering the fact that regardless of the outcome, the Defendant would still be brought to trial under indictment, and thus "[a]t the very least, such a result would tend to undermine the role of the grand jury as the **"sole method for preferring charges in serious criminal cases" and diminish the "high place it [has] held as an instrument of justice**." *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985).

     Where there is no indictment, like here, no pretrial detention hearing can begin with such a presumption. And even if there were one, a defendant's "burden of production" to overcome it is not "heavy." *United States v. Lee*, 195 F.Supp.3d 120, 125 (D.D.C. 2016) (citations omitted). The defendant must proffer at least "some evidence" or basis to conclude that the case falls "outside the congressional paradigm" giving rise to the presumption. *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (finding that the presumption "represents Congress's general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches"). In all cases, the defendant's burden is only a burden of *production*; the burden of *persuasion* remains with the government throughout the proceeding. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

## I. The Section 3142(g) Factors Favor Pretrial Release in this Case.

Mr. Cole should be released pending trial. He has no criminal history, and there is zero evidence to suggest he will flee. Each factor supports release with conditions that will reasonably assure Mr. Cole's appearance, as well as the safety of the community.

### A. The Nature and Circumstances of the Offense.

The nature and circumstances of the charged offense, while serious, do not support detention. The government proceeds on a complaint alleging violations of 18 U.S.C. § 844(d) (transporting an explosive in interstate commerce with intent to injure or intimidate or to damage property) and § 844(i) (malicious damage or attempted damage to property used in interstate commerce by fire or explosive) based on what it calls two "pipe bomb" devices placed outside the RNC and DNC headquarters on the evening of January 5, 2021. According to the affidavit, both devices were rendered safe by the U.S. Capitol Police and later assessed by the FBI Laboratory to have "weapon characteristics," with components consistent with improvised explosive devices. No device detonated, no person was injured, and no property was damaged.

Section 3142(g)(1) directs the Court to consider whether the offense "is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." While the government's theory involves an explosive device, that fact is not dispositive. The statute's enumerated categories inform the analysis; they do not

7

create an automatic rule of detention. The Bail Reform Act still requires an individualized, forward-looking assessment of whether any danger can be reasonably mitigated by conditions. *See Munchel*, 991 F.3d at 1280–83.

Measured against § 3142(g)(1)'s purpose—evaluating the offense's inherent risk profile—the record favors conditional release. No actual harm occurred. The devices were rendered safe. There were no injuries and no property damage. Dkt. 1-1 at 2–3. The charged conduct is temporally remote. The alleged placements occurred on January 5, 2021—nearly *four years* before Mr. Cole's arrest and the government's detention request—and the affidavit does not allege comparable conduct in the years since. *Id.* at 3–5. The government's proffer, taken at face value, is retrospective and circumstantial; it ties consumer purchases and historical cellular records to a past route on a single evening. Those assertions go primarily to identity and past conduct—a merits question the Act cautions courts not to resolve at a bail hearing—rather than to a present, unmitigable danger. *See Taylor*, 289 F. Supp. 3d at 66 (weight of evidence cannot, by itself, justify detention); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Finally, the unique conditions surrounding January 5–6, 2021, are unlikely to recur in a way that would present the same risk profile for Mr. Cole. The Court must ask whether conditions such as home detention, GPS monitoring, and third-party supervision can mitigate any residual risk. *Munchel*, 991 F.3d at 1283 (even though the January 6 riots were dangerous, courts "have a grave constitutional obligation to ensure that the facts and circumstances of each case warrant th[e] exceptional

8

treatment" of pretrial detention); *see also Klein*, 539 F. Supp. 3d at 151–56. On this record—no detonation, no injury or damage, a four-year gap without similar conduct, and no proffer of ongoing dangerous activity—§ 3142(g)(1) does not support detention where stringent conditions can reasonably assure community safety.

### B. The Weight of the Evidence Factor Does Not Consider Likelihood of Guilt.

The weight of the evidence does not support detention. This factor is the least important of those enumerated in § 3142(g). *See United States v. Lynch*, No. 18-CR-577, 2023 WL 3436091, at *3 (N.D. Cal. May 11, 2023).

The *Hunt* court warned against assessing the weight of the evidence in terms of the defendant's guilt; instead, courts must consider only the weight of the evidence regarding the defendant's *dangerousness*: "[a] district court assessing the weight of the evidence must not consider evidence of defendant's guilt, but rather must consider only the weight of the evidence of defendant's dangerousness." See *Hunt*, 240 F. Supp. 3d at 134. The D.C. Circuit has reasoned that the Bail Reform Act does not "authorize pretrial detention based simply on a preliminary assessment of the defendant's guilt." *Taylor*, 289 F. Supp. at 66. Indeed, "[e]ven *overwhelming* evidence of guilt would not, alone, meet th[e] test [for pretrial detention]." *Id*. (emphasis added). Consequently, no pretrial determination of guilt is made at a bail hearing. *Id*.

That established, the *Hunt* Court noted that the defendant's conspiracy to sell addictive and dangerous drugs was not an "isolated event." *Id*. Accordingly, the court examined a pattern of unlawful behavior to determine that the likelihood of engaging in future dangerous conduct was substantial. *Id*. at 136 ("[A]nd the Court has every

9

reason to believe that this conduct would not stop if defendant were to be released… because he was already given that opportunity, and he was unable to comply with his conditions of release for even one month. So, the Court finds that this factor also weighs in favor of detention.").

Moreover, when evaluating a pattern of unlawful or potentially dangerous conduct to assess the likelihood of future conduct, this Court has considered whether "the specific circumstances that made it possible for that violence to arise are likely to manifest themselves again. . ." *Klein,* 539 Supp. 3d at 155. That analysis requires courts "to consider whether the risk that a defendant poses can be mitigated by supervisory conditions, such as home detention or the presence of a third-party custodian." *Id*.

The government's showing is entirely retrospective and circumstantial. Even if credited, the government's evidence describes an isolated window on a single evening nearly four years ago. It does not point to a "pattern of troubling activity" that would typically warrant detention in other cases. *Klein*, 539 F. Supp. 3d at 155. No device detonated, and the government has not alleged any comparable conduct or dangerous affiliations in the years since. This circumstantial proof—absent a direct forensic tie or evidence of *ongoing* threats—cannot overcome the Bail Reform Act's default in favor of release subject to appropriate conditions. *See Munchel*, 991 F.3d at 1283 (The "threat [to the community] must also be considered in context.").

C.   **The History and Characteristics of Mr. Cole Demonstrate He Is Unequivocally Entitled to Conditional Bail.**

In *Klein*, the court reasoned that, when reviewing the history and characteristics of a defendant, the following factors must be considered:

1. The available information concerning the defendant's character, as well as his physical and mental condition. *Id.* at 154;

2. Family ties. *Id.*;

3. Employment. *Id.*;

4. Financial resources. *Id.*;

5. Length of residence in the community and community ties. *Id.*;

6. Past conduct, including history relating to drug or alcohol abuse, criminal history, and records concerning appearance at court proceedings. *Id.*; and

7. Whether, at the time of the offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. *Hunt*, 240 F. Supp. 3d at 134.

In undertaking this analysis, the *Klein* court found the following favorable to the defendant: (1) he came from a close-knit family; (2) he attended a local college; (3) he had previously maintained steady employment; (4) he had no history of drug or alcohol abuse; and (5) he had a minimal criminal history. After crediting the defendant with these favorable factors, the court in *Klein* also noted unfavorable factors, including a history of participating in "Proud Boy" events, where he was "at

11

the very least, prepared to engage in violent conduct." *Klein*, 539 F. Supp. 3d at 151. The court characterized this conduct as "Klein engaged in a pattern of troubling activity…" *Id*. at 155. Mr. Cole's circumstances seem similar, yet, differ significantly in some significant respects.

First, Mr. Cole is a high school graduate who has maintained employment with his family-run business since age 14. Second, Mr. Cole has strong family ties in the community, having been raised in Woodbridge, Virginia and having lived in that community with his parents for the past 21 years. Moreover, Mr. Cole's community ties are further exemplified by the strong character references provided by his neighbors and others who have interacted with over the years. (See Exhibit A.)

Indeed, Mr. Cole can continue being a productive member of society upon release, because he has the same job waiting for him. Mr. Cole's employment history working in his family's bail bonding business is steady and meaningful. Mr. Cole is a high school graduate who works in a northern Virginia office of his family's business. In that role, he supports bonded individuals to comply with their court-imposed obligations. From this, Mr. Cole is familiar with court processes and understands his commitment to appear as required. His position remains available to him upon release, which will provide immediate structure and accountability. Moreover, Mr. Cole has no history of drug or alcohol abuse.

Additionally, Mr. Cole has no criminal history; has never been arrested or convicted; has no history of failures to appear, and was not on probation, parole, or any other form of supervision at the time of the alleged conduct. These are classic

markers of reliability and compliance that weigh strongly against detention. *See e.g.*, *United States v. Nwokoro*, 651 F.3d 108, 111 (D.C. Cir. 2011). None of these facts are in dispute. There is no pattern of alarming conduct either prior to or after the alleged conduct at issue in this case. Mr. Cole does not pose a danger to the community.

Relevantly, the government, when discussing Mr. Cole's history and characteristics, fails to even mention the vast majority of statutory factors highlighted above, choosing to simply focus on cursory unsupported allegations. For example, the government argues that Mr. Cole spent nearly five years trying to evade detection. Dkt. 17 at 21. Not true: Mr. Cole lived with his parents the entire time, never moved, and followed his same routine daily. Avoiding the litany of statutory factors that favor Mr. Cole only highlights the weakness of the government's position for detention. *Id*. Notably, the government *fails to cite even one case* in its entire argument section.

In sum, nothing in the record suggests evasive conduct or resistance to law enforcement. The government does not allege that Mr. Cole attempted to flee, obstruct, or commit additional crimes. Mr. Cole simply does not pose a danger to the community.

### D. Mr. Cole Poses No Danger to the Community—evidenced by the last four years of his life.

The government bears the burden to prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(f). Detention must rest on a concrete, forward-looking finding of dangerousness; past conduct, standing alone, is

insufficient. The inquiry is whether the risk, if any, can be *mitigated* by strict conditions. Here, it can.

On this record, the government has not carried its burden. "[I]n the absence of a concrete, prospective threat to public safety that cannot be mitigated by strict conditions, this Court must apply the default rule favoring liberty." *Klein*, 539 F. Supp. 3d at 156 (quoting *Cua*, 2021 WL 918255, at *8).

The alleged conduct here is a single, discrete episode on January 5, 2021. The Court must examine whether "the specific circumstances that made it possible" for the alleged conduct to arise in the first place. *Munchel*, 991 F.3d at 1282 (A defendant likely presented a danger to the community because "in media interviews [he] showed no remorse and indicated that he would 'undertake such actions again.'").

The circumstances giving rise to the charged offense in this case are incredibly unlikely to manifest themselves again. And even if they were, as discussed above, conditions can neutralize any residual risk. The government has not identified any present-day factor—access to weapons, ongoing procurement, recent extremist postings, organizing conduct, or similar—that would make future dangerous conduct likely. Nor could it because none exist. Whatever risk the government posits is theoretical and backward-looking, belied by the past four years where Mr. Cole lived at home with his family without incident. All of this weighs heavily against an inference of current danger to the community at large.

In any event, stringent conditions will reasonably assure community safety. Mr. Cole will submit to home detention enforced by GPS monitoring, under the

14

supervision of a vetted third-party custodian, his grandmother, in Gainesville, Virginia. He will surrender any passport, restrict travel to the Northern District of Virginia, and submit to Pretrial Services oversight with in-person reporting as directed. He will abide by a no-weapons order and remove any firearms from the residence.

To specifically address the government's apparent theory, Mr. Cole will agree not to possess any explosive materials or associated components referenced in the criminal complaint (including metal pipe and end caps, black powder or precursors, blasting caps, commercial igniters, large-gauge wiring, timers, or alligator clips) without prior written approval of Pretrial Services, and will consent to unannounced inspections by Pretrial Services to verify compliance. He will refrain from contacting any witnesses outside the presence of counsel, from posting about the case on social media, and from engaging in any conduct that could be perceived as threatening or harassing. He will maintain verified employment and comply with any substance use or mental health evaluation and treatment that Pretrial Services recommends.

Courts in this district have recognized that such conditions can sufficiently mitigate any community danger even in serious January 6 matters where the record does not demonstrate an ongoing, unmanageable threat. *See Munchel*, 991 F.3d at 1289 (Katsas, J., concurring) ("[B]ecause the record strongly suggests that [defendants] would present no safety risk if subjected to strict release conditions, the district court clearly erred in finding that the government had proved its case by clear and convincing evidence."); *Klein*, 539 F. Supp. 3d at 155–56 ("[D]espite the serious

15

concerns raised by [defendant's] conduct on and prior to January 6," the appointment of a third-party custodian, home detention; GPS monitoring, appropriate social media restrictions; and a ban on access to any firearm or other weapon would sufficiently "provide sufficient assurances of community safety."); *Cua*, 2021 WL 918255, at *1 (ordering pretrial release for a January 6 rioter who sat "atop the Senate dais, in the chair previously occupied by former Vice President Mike Pence, with his feet up on [ ] the desk.").

Here, a years-long gap free of similar conduct and a robust package of tailored restrictions, the government has not shown—much less by clear and convincing evidence—that detention is the *only* means to protect the community. The Court should order release on the conditions outlined above or such additional conditions as it deems appropriate.

## CONCLUSION

For the foregoing reasons, the Court should order release on the proposed conditions, or on any other combination of conditions the Court deems appropriate.

Respectfully submitted this December 30, 2025.

| | |
|---|---|
| **/s/ MARIO B. WILLIAMS** | **/s/JOHN SHOREMAN** |
| Mario B. Williams | John M. Shoreman |
| **Ga. Bar No. 235254** | (DC Bar #407626) |
| **(**Pro Hac Vice) | McFadden & Shoreman |
| | HDR LLC |

**HUMANITY DIGNITY AND RIGHTS LLC**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel.: 470-257-2485
Email: mwilliams@hdrattorneys.com, jms@mcfaddenshoreman.com
***Counsel for Brian Cole Jr***

/s/ *J. ALEX LITTLE*
J. Alex Little
(*pro hac vice pending*)
Zachary C. Lawson
(*pro hac vice pending*)
John R. Glover
(*pro hac vice pending*)

**LITSON PLLC**
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co
zack@litson.co
jr@litson.co
***Counsel for Brian Cole Jr.***

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served a copy of the **BRIAN COLE'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** upon the all attorneys of record via the Court's CM/ECF electronic filing system.

Respectfully submitted on this December 30, 2025,

**/s/ JOHN M. SHOREMAN**
John M. Shoreman