IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-mj-00276 |
| ) | |
| BRIAN COLE, JR., ) | ~~UNDER SEAL~~[1] |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

DEFENDANT'S RESPONSE IN OPPOSITION
AND MOTION FOR IMMEDIATE RELEASE

Defendant Brian Cole Jr. respectfully submits this response in opposition to the government's memorandum, filed late yesterday, December 29, 2025, asking this "Court [to] accept the indictment return," referencing a document returned earlier that day not by a grand jury of this Court but rather by a grand jury organized by, and sitting at the behest of, the D.C. Superior Court. (Gov. Mem. at 7.)

For the reasons detailed below, this Court should not accept the purported indictment, nor should it read Chief Judge Boasberg's order issuing a stay of his Memorandum Opinion in *United States v. Kevontae Stewart*, Case No. 25-mj-225, as allowing it to accept an indictment contrary to the Federal Rules of Criminal Procedure.

---

[1]      The Defendant does not believe that this pleading should be sealed, given the important public policy concerns implicated by these issues. He has filed it under seal to permit the Court to determine if any aspect of his response needs to be redacted. But, by doing so, he does not concede that sealing is appropriate.

Absent the timely return of a valid indictment, and because the government apparently is unwilling or unable to establish probable cause for the charged crimes at a preliminary hearing, the Court must "discharge[ Mr. Cole] from custody or from the requirement of bail or any other condition of release," pursuant to 18 U.S.C. § 3060(d). To be sure, the government may later—*if it is able*—secure a valid indictment from a properly constituted federal grand jury. But it cannot hold Mr. Cole for weeks longer than the statute allows while it attempts to do so.

## INTRODUCTION

The government wants to avoid a preliminary hearing, where its evidence will be tested in public. Rather than subject its proof to cross-examination, the government sprinted to a different court—supervised by different judges and subject to different rules of evidence, privilege, and juror competency—to secure a last-minute indictment. It now blames the defense for forcing it to violate the Federal Rules of Criminal Procedure and asks this Court to bless its end-around by accepting an indictment that does not comply with those Rules. The Court should not do so.

To defend its actions here, which Chief Judge Boasberg recognized as "unorthodox" in *Stewart*, the government points fingers. But the government alone is responsible for its failure to comply with Rule 5.1 and 18 U.S.C. § 3060. The government chose to initiate this case by complaint rather than indictment, entitling Mr. Cole to a timely preliminary hearing absent a valid indictment. According to the government's own pleading, the federal grand jury was available over the following two weeks to hear evidence and return an indictment if probable cause existed. Yet

the government chose not to present evidence during that period. Only *after* defense counsel insisted on holding the preliminary hearing did the government pursue its current path—seeking a federal indictment from a D.C. Superior Court grand jury. This "indictment" does not comply with federal law, including Rules 5.1(a)(2), 6, and 7 of the Federal Rules of Criminal Procedure, and 18 U.S.C. § 3060(e). Because it does not, and because Chief Judge Boasberg's stay does not require this Court to conclude otherwise, the government either must present evidence at a preliminary hearing sufficient to establish probable cause, or the Court must release Mr. Cole from custody without conditions.

## FACTUAL BACKGROUND

1.  The government arrested Mr. Cole on December 4, 2025, pursuant to an arrest warrant issued by a criminal complaint charging two federal crimes under 18 U.S.C. § 844. (Dkt. 1, 7.) This was permitted by Fed. R. Crim. P. 4.

2.  The next day, the Court held an initial appearance pursuant to Rule 5(a)(1)(A), at which time Mr. Cole was advised of the charges against him.

3.  At that hearing, the government asked that Mr. Cole be held in custody pending a detention hearing, which it was permitted to do by 18 U.S.C. § 3142(f)(2).

4.  The Court scheduled the detention hearing for December 15, 2025.

5.  Because Mr. Cole was arrested on a complaint, the Court was required to "fix[]" "the date for the preliminary [hearing]" at the initial appearance, 18 U.S.C. § 3060(b), but it failed to do so. It also was required to hold a preliminary hearing "within a reasonable time, but no later than 14 days after the initial appearance."

Fed. R. Crim. P. 5.1. These mandates are self-executing and need not be formally requested by the defendant.

6. On December 10, the government filed a motion to exclude certain time for bringing an indictment under the Speedy Trial Act, specifically 18 U.S.C. § 3161(b). (Dkt. 9.) Nowhere in the motion did the government mention its obligations under 18 U.S.C. § 3060(b)(1), which required that a preliminary hearing be held within 14 days.

7. To support the motion, the government noted that "the requested continuance of the indictment deadline and exclusion of time will allow the defense reasonable time to review voluminous initial discovery and have a meaningful opportunity to prepare for the detention hearing, which the defense is seeking to continue for the same reasons." (*Id.* at 2.) Nowhere does the government explain why its ability to seek an indictment would be delayed by allowing the *defense* more time to review discovery and prepare for the detention hearing.

8. Nonetheless, in that same motion, the parties agreed to reschedule the detention hearing for December 30, 2025—an additional fifteen days. (*Id.* at 5.)

9. This sort of agreement is consistent with § 3060(c), which allows for the continuance of the preliminary hearing "[w]ith the consent of the arrested person." Mr. Cole has never waived his right to a preliminary hearing nor consented to any delay beyond December 30, 2025.

10. The Court granted the motion and reset the detention hearing for December 30, 2025. (Dkt. 11.) The Court again failed to mention the preliminary hearing in its order. (*Id.*)

11. Prior to December 30, 2025, Mr. Cole's "counsel of record," as the government describes them, understood that he could not be detained at that hearing unless the government had established probable cause either by returning an indictment or presenting evidence at a preliminary hearing. *See* 18 U.S.C. § 3060(e) and Fed. R. Crim. P. 5.1(f). In other words, they understood that the detention hearing would necessarily include the preliminary hearing if the government had not secured an indictment before December 30.

12. Given the need to prepare differently for a combined hearing on probable cause and detention rather than simply a detention hearing, counsel of record inquired with the AUSA about how the government intended to proceed. The relevant exchange, which the government failed to include in full in its brief, started on December 24, 2025 and states:

> We also need to know whether the government plans on holding a probabl[e] cause hearing on Tuesday [December 30, 2025]. We have received no information regarding an indictment and thus would like to know the government's position on this. Please let us know by December 27, 2025.

Email from Mr. Williams to AUSA Jones, December 24, 2025.

13. In other words, defense counsel had expected based on past practice that the government would secure an indictment before December 30, 2025—thus

removing the need for (and right to) a preliminary hearing. This email asked, in essence: *Are you going to indict this case before next Tuesday?*

14. As to this question, the government responded two days later with one sentence:

> Tuesday's hearing is a detention hearing under 18 U.S.C. § 3142(f). The government will be proceeding by proffer.

Email from AUSA Jones to Mr. Williams, December 26, 2025, at 9:54 pm.

15. This answer did not address whether the government intended to seek an indictment before Tuesday or whether the government previously had attempted to do so but failed. Nor could defense counsel understand how the government could expect to proceed "by proffer" to seek detention absent a probable cause finding based on evidence it presented at a preliminary hearing. Similarly, as the Court is aware, defense counsel generally are not provided with the schedule for when the federal grand jury meets, and so Mr. Cole's legal team did not know if it were possible (and if the government were planning) to seek an indictment on December 29, 2025.

16. In this context, two options seemed likely: (1) the government had tried and failed to secure an indictment; or (2) it was still planning to obtain an indictment from the federal grand jury on Monday. To that end, Mr. Williams quickly wrote back:

> Also, please tell us whether the government has sought an indictment before a grand jury on the charges against Brian Cole Jr. If an indictment was sought before a grand jury, we are requesting all documents demonstrating the outcome of the grand jury. For example, if a "No Bill" was rendered by the grand jury on Brian Cole Jr's charges, please provide us with that. Please provide us with this documentation prior to this Monday.

Email from Mr. Williams to AUSA Jones, December 27, 2025 at 12:10 am.

17. In a follow-up to Mr. Williams's email, Mr. Shoreman acknowledged what is noted above, which was that "Rule 5.1 was not discussed at the preliminary hearing. Only the date of the detention hearing (Dec. 15) was discussed." Email from Mr. Shoreman to Mr. Williams and AUSA Jones, December 28, 2025 at 9:08 am.

18. The next day, Sunday, December 28, 2025, the government responded on these issues:

> As John [Shoreman] indicated below, the parties have not yet scheduled a Rule 5.1 preliminary hearing given the defense's request to continue the December 15 detention hearing (at which we would typically have scheduled the preliminary hearing). Please let me know if you have a view on when to schedule that hearing.
>
> Had there been a "no bill" in this matter, we would have promptly reported it to the Court pursuant to FRCP 6(f).[2] The government has not yet sought a grand jury indictment in this case given the defense's request to continue the detention hearing and your agreement to exclude time under the Speedy Trial Act's 30-day indictment deadline. Additionally, there are no sitting grand juries in D.C. District Court between 12/19 and 1/5.

Email from AUSA Jones to Defense Counsel, December 28, 2025, at 9:08 am.

19. In its email, the AUSA did not explain (i) why he believed that "the parties," as opposed to the magistrate judge, had to schedule the preliminary hearing; (2) why it was "typical[]" to ignore the statute and wait until the detention hearing to schedule the preliminary hearing; and (iii) why the defense's initial request to continue the detention hearing would delay the government's ability to secure an

---

[2] The government must only make the report of a "No True Bill" under Fed. R. Crim. P. 6(f) "[i]f a complaint or information is pending against the defendant," so the government's response does not say whether it sought (and failed to receive) such an indictment *prior* to Mr. Cole's arrest. From discovery, the defense team is aware that federal agents had placed the defendant under surveillance for a long period of time before his arrest, suggesting again that they had plenty of time to seek an indictment.

indictment. Further, the prosecutor's reference to the schedule of sitting grand juries in D.C. District Court was new information to the defense team, which led it to wonder why the government had not attempted to secure an indictment before the grand jurors left for the holidays. To the government, this schedule was no surprise.

20. Upon learning the federal grand jury schedule, the defense team recognized that the government would not be able to validly indict this case before the date set for the preliminary hearing—that is, Tuesday, December 30. In turn, defense counsel finally had the answer to the question they had asked four days earlier: *No, the government is not going to indict this case before next Tuesday.* This meant, based on a plain reading of the relevant federal Rules and statutes, that there would have to be a preliminary or Mr. Cole would be released without conditions.

21. Recognizing that the government usually seeks to avoid a preliminary hearing, defense counsel offered a compromise. Less than 30 minutes after the government's last email, defense counsel replied, in pertinent part:

> (1) "We can exchange dates for the preliminary hearing;" and
> (2) "[W]ould the government be interested in waiving the preliminary hearing in exchange for bail under a strict set of agreeable conditions placed on Mr. Cole?"

Email from Mr. Williams to AUSA Jones, December 28, 2025 at 1:24 pm.

22. As the email made clear, Mr. Cole never waived his right to a preliminary hearing.

23. About 20 minutes later, the government responded on these two points by writing: (1) "Would the afternoon on January 7 or January 8 work for a preliminary hearing?"; and (2) "We're not willing to agree to release under conditions in exchange

for a waiver of the preliminary hearing." Email from AUSA Jones to Defense Counsel, December 28, 2025, at 1:43 pm.

24. Given that a federal grand jury would reconvene on January 6, 2025, it would have been malpractice for defense counsel to agree to delay the preliminary hearing again until a date as late as January 7, 2026. Accordingly, "a new counsel for the defendant," as the government describes it, responded back 3 minutes later:

> We are not willing to wait until January 7 or 8 for the preliminary hearing. We agreed to December 30.
>
> It is not the parties' obligation to schedule that hearing but rather a mandatory obligation of the magistrate judge. It certainly appears here that the parties and the judge failed to mention this hearing along with the detention hearing at the initial appearance. That does not change the fact that, under Rule 5.1(c), the preliminary hearing must be set "no later than 14 days after the initial appearance" where "the defendant is in custody." Under Rule 5.1(d), the hearing can be continued with the defendant's consent — which he did as reflected in the prior joint motion setting Tuesday, December 30 as the hearing date.
>
> But the defense presumed you understood your obligation to present evidence at such a hearing, and that's what we've been preparing for on December 30.
>
> As you can see from my colleagues' emails, we've been working to understand if you planned to indict before then. Otherwise, we insist that the hearing be Tuesday.

Email from Mr. Little to AUSA Jones, December 28, 2025 at 1:46 pm.

25. Despite the flurry of emails over the past three hours, the government did not respond to that email for the rest of the day. Mr. Cole's defense team thus prepared for a preliminary hearing, including by flying out a witness to testify about the lack of probable cause.

26.    Instead of responding on the preliminary hearing issue, the government filed its detention memo. (Dkt. 17.) In that pleading, the government mentioned that it would rely on "a finding of probable cause." (*Id*. at 1, 17)

27.    Given the government's implicit claim in the emails that it did not need a probable cause hearing to detain Mr. Cole, the defense team wanted to ensure that the Court was made aware of these issues as early as possible before the Tuesday hearing began. To that end, Mr. Cole filed a Motion to Confirm Preliminary Hearing Date. (Dkt. 21.)

28.    In his motion, Mr. Cole asked the Court:

> (ii) to confirm that December 30, 2025 will proceed as both the preliminary hearing and detention hearing, (iii) to direct the government to be prepared to present evidence, (iv) to deny any further continuance absent the strict Rule 5.1(d) showing, which the government cannot make here; and, (v) if the preliminary hearing is not timely held and no indictment has intervened, to order Mr. Cole's immediate discharge from custody pursuant to 18 U.S.C. § 3060(d).

(Dkt. 21 at 4.)

29.    The Motion to Confirm Preliminary Hearing Date was filed early Monday morning, December 29. (*Id.*) The government did not file a response.

30.    Instead, at 5:20 pm, the Court advised Mr. Cole's counsel that:

> This afternoon, the U.S. Attorney's Office sought to present an indictment in this case that was returned today by a D.C. Superior Court grand jury, invoking D.C. Code § 11-1916(a). Mindful of recent developments in the case of *United States v. Stewart*, 25-mj-225 (D.D.C.), the Court did not immediately accept the indictment and deferred that determination.

. . .

> As noted, the Court this afternoon declined to formally accept the indictment pending further briefing from both sides as to whether Judge Boasberg's stay order extends to the circumstances presented here . . . . The Court understands that the government is prepared to file a brief in support of its position, and the Court will then allow the defense to file a response. Following briefing, the Court will determine how it will proceed with respect to the indictment.

Email from U.S. Magistrate Judge Matthew J. Sharbaugh to all counsel.

31. At approximately 11 pm on December 29, the government served a redacted copy of this briefing upon Mr. Cole's counsel. In its memorandum in support of accepting the D.C. Superior Court indictment, the government claimed that "[t]he circumstances presented here are easily distinguished from those presented in *Stewart*, and thus, the Court may properly receive the defendant's indictment returned on December 29, 2025." (Gov. Memo. at 4.)

32. The government blamed its decision to seek an indictment from a D.C. Superior Court grand jury rather than a district court grand jury on the defense, claiming that it "sought an indictment return from a Superior Court grand jury panel out of necessity due to the absence of any federal panels and in direct response to changed circumstances brought about by the defense." (Gov. Memo. at 5-6.)

33. The "changed circumstances" were unstated but apparently consist of the government's prior belief that it could ignore the commands of 18 U.S.C. § 3060(b) and Fed. R. Crim. P. 5.1(c) so long as defense counsel and the Court did not notice.

34. This is not hyperbole. The government admits as much, stating that it "would have sought [] an early indictment from a federal grand jury panel had there been any indication that the defense, contrary to all indications, intended to pursue

a preliminary hearing on December 30, 2025." In other words, the government expected defense counsel to drop the ball.[3] That is not "changed circumstances."

35. Nor could these possibly be "extenuating circumstances comparable to those in [the redacted case]." Although Mr. Cole's counsel knows nothing of the redacted case the government references, it is absurd to suggest that this case presents "newly arising, time-sensitive circumstances beyond the government's control." (Gov. Memo. at 7.) The government had plenty of time to seek an indictment in this case from the proper grand jury in the first half of December; it chose not to. The government has every ability to present evidence at a preliminary hearing today; it apparently will decline to do so. The only thing that was apparently beyond the government's control was accounting for the statutory deadlines for a preliminary hearing. This is not good cause to break the rules.

36. Further, on the question of the scope of the *Stewart* stay, the government seems to rely on the argument that "analysis of the *Nken* factors is case specific" and that "the circumstances presented in this case are markedly different from those in *Stewart*." (*Id.* at 4-5.) It does not address, *inter alia*, "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

---

[3] The government does not proffer any reason why competent defense counsel would agree to forego a preliminary hearing in the absence of receiving some benefit, such as an agreement to release the defendant from custody. That is because there is none—making the government's purported reliance on this "indication[]" entirely unreasonable.

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." (Gov. Memo. at 4.)

## ARGUMENT

The stay issued by Chief Judge Boasberg in *Stewart* contemplated that a criminal defendant "could well be irreparably harmed if his prosecution moves forward on an indictment ultimately held invalid." (*Stewart*, Dkt. 45 at 1.) As a result, in *Stewart*, the D.C. Superior Court indictment has not been returned—even though the Court determined it was validly issued under D.C. Code. The reason? The question whether the government's action is legal or not "is a close and challenging one." (*Id.* at 1.) And the Court of Appeals should be the ones to decide it. (*Id.* at 2.)

So, too, here. The Court should not accept the indictment absent direction from the Court of Appeals. The *Nken* factors support this result. And it leaves the government exactly where it was before yesterday: With the opportunity to salvage its case by presenting evidence in a preliminary hearing <u>today</u>, as federal law directs. Absent such a showing, Mr. Cole must be released.

### I. There Is a Strong Likelihood That the D.C. Circuit Will Find the Purported "Indictment" Invalid.

Judge Boasberg summarized the argument against the "indictment" here as follows: "a D.C. Superior Court grand jury was not convened by a 'court' in accordance with the Federal Rules, and any indictment returned by such a grand jury is invalid under those Rules." (Mem. Op. at 11.) He continued to say:

> The text of the Federal Rules of Criminal Procedure offers a single path to formally charge a defendant with a felony in federal court: via indictment returned by a grand jury, which in turn is convened by a

> federal (not D.C. Superior) "court." The Federal Rules, furthermore, "govern the procedure in all criminal proceedings in the United States district courts." Rule 1(a)(1). Indeed, "one of the central purposes of the Rules was to make uniform the practices of all the district courts." *United States v. Wallace & Tiernan, Inc.*, 349 F.2d 222, 226 (D.C. Cir. 1965). It follows that an indictment obtained through a different path — namely, by a non-federal grand jury — does not comply with the Rules' strictures, and is thus invalid. . . . Magistrate Judge Faruqui adopted this interpretation.

(*Id.* at 11-12.) Ultimately, however, the Court concluded that, because "the Advisory Committee Note to the 2002 Amendment characterizes most of the changes to Rule 6 as 'stylistic,'" the 2002 Amendments "do not alter preexisting jurisdictional arrangements," which the Court found permitted the D.C. Superior Court to return indictments in D.C. District Court. (*Id.* at 7-11.) Further, the Court concluded that it could not read the 2002 Amendments literally because it would "render[ D.C. Code] Section 11-1916(a) meaningless." (*Id.* at 13.) "To conclude that Congress intended to gut Section 11-1916(a)'s application to one of those two functions (indictment), this Court would require evidence of a 'clear and manifest' legislative intention to do so." (*Id.* at 13-14.)

But the Court's decision misapprehends or fails to note three critical issues, all of which cut against its reading of the relevant rules and statutes:

*First*, courts use the same tools of statutory construction when analyzing the Federal Rules as they do when analyzing federal statutes. And chief among these is the recognition that the text of the Rule controls, absent ambiguity. In other words, courts interpret the Rules (like other Congressional acts) to mean what they say. Here, the text of the relevant Rules leaves no ambiguity: a court is a federal court,

only federal courts can empanel grand juries, and only these grand juries can return indictments in federal courts. There is no need to look at the Advisory Committee Notes because there is no mysterious language to decipher. The Rules mean what they say—and that is even true if we all believe that Congress failed to catch a substantive change in the law that we all believe in hindsight must have been unintended. As Judge Boasberg notes in another context, even when the resulting "scenarios are . . . troubling . . . the remedy would lie with Congress" to fix the Rules, "not this Court" to interpret them contrary to the plain meaning of their text.

*Second*, the Rules Enabling Act, 28 U.S.C. § 2072, provides ample statutory ground to support the conclusion that the 2002 Amendments to the Federal Rules of Criminal Procedure supersede Section 11-1916(a) of the D.C. Code. Again, the relevant statutory language is clear: "All laws in conflict with [the Federal Rules] shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). And this, too, means what it says. *See Penfield Co. v. Securities & Exch. Comm'n*, 330 U.S. 585, 589 n.5 (1947) ("Where a Rule of Civil Procedure conflicts with a prior statute, the Rule prevails."); 4 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1030 & n.2, at 125 (2d ed. 1987) ("Statutes enacted prior to the rules that are inconsistent with them are superseded."). Here, Section 11-1916(a) of the D.C. Code was enacted 32 years *before* the 2002 Amendments to the Federal Rules of Criminal Procedure. When the two conflict, the later-enacted Federal Rules—including their unambiguous definition of "court," *see* Fed. R. Crim. P. 1(b)(2), (b)(3)—prevail.

*Third*, because the grand jury is "an appendage of the court, powerless to perform its investigative function without the court's aid," *Brown v. United States*, 359 U.S. 41, 49 (1959), *overruled on other grounds by Harris v. United States*, 382 U.S. 162 (1965), the grand jury summoned by the D.C. Superior Court cannot investigate matters—and return indictments—that are beyond the jurisdiction of the court itself. *See Thompson v. United States*, 548 F.2d 1031, 1037 n.33 (D.C. Cir. 1976) (reading the D.C. Code to "most certainly . . . divest [D.C. Superior] Court of jurisdiction to hear criminal cases involving United States Code offenses"); *see also* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, *exclusive* of the courts of the States, of all offenses against the laws of the United States.") (emphasis added). Ultimately, "[i]t is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so." *Brown*, 359 U.S. at 49. But, here, the D.C. Code makes clear that the Superior Court is powerless to enforce federal criminal laws. Reading section 11-1916(a) as still permitting such jurisdiction through the supervision and enforcement of a grand jury investigation of those federal laws contradicts this clear statutory command.

These jurisdictional deficits lead to massive practical issues. For example, may the government choose to investigate a federal crime through a grand jury of the D.C. Superior Court—subject to the law of privileges established by the D.C. Court of Appeals—when that non-Article-III court provides less protection for a witness than the D.C. Circuit would allow? *Cf. Moore v. United States*, 342 A.3d 1222, 1226 (D.C.

2025) (holding "that criminal threats to cause death or substantial bodily harm fall outside the attorney-client privilege"). This and other potential constitutional problems can be avoided by reading the Federal Rules to mean what they say.

## II.    Mr. Cole Will Be Irreparably Injured Absent a Stay.

Here, more than in *Stewart*, Mr. Cole will be irreparably harmed absent a stay that maintains the status quo. Like in *Stewart*, Mr. Cole will "be irreparably harmed if his prosecution moves forward on an indictment ultimately held invalid." (*Stewart*, Dkt. 45 at 1.) But the defendant in *Stewart* was not in custody (like Mr. Cole) when the Court issued the stay, and he did not risk losing any constitutional or statutory rights. This case is different. If this Court accepts the invalid indictment, Mr. Cole may well be detained longer than federal law allows. *See* 18 U.S. Code § 3060(d). So, too, would the Court's denial of the stay and acceptance of the disputed indictment deprive him of his right to a preliminary hearing under Fed. R. Crim. P. 5.1(f).

Further, the fact that the *federal* statute and *federal* Rule at issue each reference an "indictment" demonstrates the stakes. Those provisions are tied to a term that Congress used—in every other context—to refer only to *federal* indictments returned by *federal* grand juries. Allowing Mr. Cole to lose those federal rights without a showing that the government has met the conditions Congress intended would cause additional, irreparable harm.

### III.     The Stay Will Not Substantially Injure the Government.

If this Court refuses to return the disputed indictment until the D.C. Circuit rules, and thereby maintains the stay in *Stewart*, the government would not suffer any harm. It has all the tools it needs to protect its interests—namely maintaining Mr. Cole's detention and persisting in this prosecution.

Specifically, the stay does nothing to prevent the government from proving probable cause at a preliminary hearing—and thereby avoiding the provisions of Rule 5.1(f) or section 3060(d). If the government is harmed by these provisions, it is harmed by its own inaction and unwillingness to do what due process requires: subject its proof to an adversarial contest.

### IV.     The Stay Is In the Public Interest.

As the Court recognized in *Stewart*, "the public interest lies in letting the Court of Appeals decide this issue before the Government moves forward . . . in similar fashion on other cases." (*Stewart*, Dkt. 45 at 2.) This is one of the other cases Judge Boasberg predicted. And although it represents a different kind of irregularity, it is no less irregular. As made clear above, the government apparently believed it could ignore the applicable Federal Rules and federal statutes governing when a detained defendant must be provided an opportunity to challenge the evidence against him. The public has an interest in ensuring that, if the government seeks to pursue such a shortcut, it must be blessed by the Court of Appeals.

## CONCLUSION

For the foregoing reasons, the purported "indictment" does not comply with federal law, including Rules 5.1(a)(2), 6, and 7 of the Federal Rules of Criminal Procedure, and 18 U.S.C. § 3060(e). Because it does not, and because Chief Judge Boasberg's stay does not require this Court to conclude otherwise, the government either must present evidence at a preliminary hearing sufficient to establish probable cause, or the Court must release Mr. Cole from custody without conditions.

Respectfully submitted this December 31, 2025.

/s/ **J. ALEX LITTLE**
J. Alex Little
(*pro hac vice pending*)
Zachary C. Lawson
(*pro hac vice pending*)
John R. Glover
(*pro hac vice pending*)

**LITSON PLLC**
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co
zack@litson.co
jr@litson.co

/s/ **MARIO B. WILLIAMS**
Mario B. Williams
Ga. Bar No. 235254 (Pro Hac Vice)

/s/**JOHN SHOREMAN**
John M. Shoreman
DC Bar #407626

                **HUMANITY DIGNITY AND RIGHTS LLC**
                Life Time Work - Buckhead - at Phipps Plaza
                3480 Peachtree Road, NE, Second (2nd) Floor
                Atlanta, Georgia 30326
                Tel: 470-257-2485
                mwilliams@hdrattorneys.com
                jms@mcfaddenshoreman.com

                *Counsel for Brian Cole Jr.*

## CERTIFICATE OF SERVICE

    I hereby certify that I have on this day served a copy of the foregoing pleading upon all attorneys of record via the email.

    Respectfully submitted on this December 31, 2025,

                **/s/ John M. Shoreman**
                John M. Shoreman